Filed 7/13/15  P. v. Hernandez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO JAVIER HERNANDEZ,<br><br>    Defendant and Appellant. | E060718<br><br>(Super.Ct.No. BAF1300205)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Michael B. Donner, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Francisco Javier Hernandez appeals after he was convicted of kidnapping (Pen. Code, § 209, subd. (a)), assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)), and robbery (Pen. Code, § 211). The trial court found this was an unusual case pursuant to California Rules of Court, rule 4.413, and granted probation; the court placed defendant on supervised probation for three years. Among other sentencing orders, defendant was ordered to pay $43,722.94 for presentence incarceration costs under Penal Code section 1203.1c. Defendant contends the matter must be reversed and remanded as to the order to pay incarceration costs, because the trial court failed to hold a hearing on defendant's ability to pay before entering the order. We agree with the People's contention that defendant forfeited the issue by failing to raise it below. We affirm.

<div align="center">FACTS AND PROCEDURAL HISTORY</div>

Juan Arriaga, the victim, had known defendant and defendant's brother, Luis, for a few years. In 2012, the three men planned to start a business selling and installing security camera systems. Defendant and Luis gave Arriaga $10,000 to purchase the necessary equipment, and Luis lent him $3,000 to repair Arriaga's car, after it had been damaged in an accident. Arriaga agreed to repay the $3,000 to Luis in three installments. Arriaga put the cameras and other components together, and he was the installer for the business. The camera system equipment was stored at Luis's house. Defendant and Luis also gave Arriaga a mobile telephone for use in the business.

<div align="center">2</div>

After working with defendant and Luis for several months, Arriaga wanted to quit. He had grown increasingly uncomfortable about the practices of the business. In one instance, Arriaga discovered that a security camera had been installed on a premises without the consent of all the parties. Another time, defendant and Luis told Arriaga to go into a business and onto the premises and remove all the cameras. Arriaga was concerned that he was being asked to do something illegal.

In approximately December 2012 or January 2013, defendant telephoned Arriaga and they arranged to have a meeting the following Tuesday to discuss the matter. Arriaga was uncomfortable, however, and he did not show up for the meeting. Arriaga called defendant a couple of times after that, but defendant did not answer or respond. Arriaga had no further contact with defendant. The mobile phone defendant and Luis had given him stopped working.

On February 2, 2013, a few weeks after the abortive meeting, Arriaga left his girlfriend's apartment at 6:30 or 7:00 a.m. to go to work. His car was parked on the street. When Arriaga got into his car, warning lights alerted him to a problem with the tires. Arriaga got out of the car and inspected the tires; he discovered that the two tires on the side of the car nearest the curb were flat.

As Arriaga was standing in the street, he saw defendant and Luis in a truck driving toward him at a high rate of speed. Defendant was driving; he halted the truck in front of Arriaga's car. Luis got out of the truck and yelled angrily at Arriaga. He demanded that Arriaga pay back the $10,000 for the security equipment. Luis said he would take

3

Arriaga's car and hold it until the money was repaid. Luis attempted to grab the car keys from Arriaga's hand and they struggled. Arriaga said that he was working on his own now, and that he needed more time to pay the brothers back.

While Luis struggled with Arriaga over the car keys, defendant also got out of the truck and joined the fight. Defendant kneed Arriaga in the chest and said, " 'Don't you ever try to tell me, oh, another Tuesday,' " in apparent reference to the missed meeting several weeks earlier. Arriaga was knocked to the ground, and defendant continued hitting him in the chest. Luis took Arriaga's car keys while defendant was hitting Arriaga. Arriaga later reported that he had pain from the beating for three months. Defendant pulled Arriaga up by grabbing him around the neck. Arriaga was not fighting back. Defendant dragged Arriaga toward another car; the back door of the car was open, and defendant tried to shove Arriaga inside. Arriaga resisted by pushing back with his feet, and he managed to break away.

Luis told Arriaga that he had one day to repay the money. He threatened Arriaga that what Arriaga had just experienced was "only a small test," and that he and defendant knew where Arriaga's children lived. Luis also demanded return of the mobile phone he and defendant had given to Arriaga. Arriaga said he needed the car keys, because the phone was locked in the car. Arriaga grabbed his car keys, and retrieved the phone, which he gave to Luis. Luis did not try to take back the car keys again.

Surveillance cameras at the apartment complex had recorded the altercation.  The video was played for the jury.

Defendant and his brother were both charged as a result of these events. Defendant was convicted by a jury of kidnapping to exact money, assault by force likely to produce great bodily injury, and robbery.

At sentencing, the trial court found that, although defendant's offenses would ordinarily disqualify him from probation, probation could be granted based on unusual circumstances.  The court placed defendant on formal probation for three years.  Among the conditions of probation were that defendant serve 365 days in county jail, with credit for the 307 days he had already served.  Defendant was also ordered to pay $43,722.94 in presentence incarceration costs pursuant to Penal Code section 1203.1c.

Defendant filed a notice of appeal, contending that the evidence was insufficient to support the order to pay presentence incarceration costs, because the trial court had failed to hold a hearing, as provided in the statute, regarding defendant's ability to pay such costs.

<div align="center">ANALYSIS</div>

I. <u>Defendant Failed to Request a Hearing on His Ability to Pay, Forfeiting the Right to Raise the Issue on Appeal</u>

Although defendant frames the issue on appeal as a matter of sufficiency of the evidence of his ability to pay the presentence incarceration costs, the People raise a preliminary issue:  whether defendant forfeited the right to raise the issue on appeal by

<div align="center">5</div>

failing to request a hearing below, or failing to object to the order imposing the incarceration costs. Defendant responds that he was not informed that he had a right to request a hearing on his ability to pay, and he never expressly waived that right. Citing *People v. O'Connell* (2003) 107 Cal.App.4th 1062, at pages 1067-1068, and *People v. Pacheco* (2010) 187 Cal.App.4th 1392, at pages 1401 and 1404, defendant maintains that a remand to the trial court is warranted to determine a defendant's ability to pay where the record does not indicate that any determination of ability to pay was previously made.

Penal Code section 1203.1c, subdivision (a), provides in relevant part that, if a probationer is ordered to serve time in local custody as a condition of probation, the trial court "may, after a hearing, make a determination of the ability of the defendant to pay all or a portion of the reasonable costs of such incarceration, including incarceration pending disposition of the case." The probation report recommended ordering defendant to pay $41,159.98 as the cost of presentence incarceration for 289 days. At the sentencing hearing, the court mused that defendant had been facing life in prison, had the court not found unusual circumstances justifying a grant of probation. The court ordered defendant serve 365 days in the county jail as a condition of probation; defendant was given credit for 307 days already served. Without holding a hearing on defendant's ability to pay, the court proceeded to order defendant to pay $43,722.94 for the 307 days of presentence custody he had already served. Neither defendant nor his counsel objected, or requested a hearing on defendant's ability to pay.

Defendant's reliance on *People v. O'Connell*, *supra*, 107 Cal.App.4th 1062, and *People v. Pacheco*, *supra*, 187 Cal.App.4th 1392, for the proposition that a case should be remanded to the trial court for a hearing on ability to pay, is misplaced.

*People v. Pacheco*, *supra*, 187 Cal.App.4th 1392, involved two similar provisions: Penal Code section 1203.1b, which authorizes a court to order a probationer to pay probation costs as a condition of probation, and Penal Code section 987.8, which permits the trial court to order a defendant to repay all or some of the costs of representation by appointed counsel. Like Penal Code section 1203.1c, both Penal Code section 987.8 and Penal Code section 1203.1b provide for a hearing and a court determination on a defendant's ability to pay before imposing an order to repay some or all of the costs of appointed counsel or the costs of probation supervision. In *Pacheco*, the trial court had failed to hold any hearing on the defendant's ability to pay; accordingly, the defendant argued on appeal that the evidence was insufficient to support the orders. (*People v. Pacheco*, *supra*, 187 Cal.App.4th 1392, 1397, 1398-1399, 1400-1402.)

The *Pacheco* court rejected the People's assertion that the claims were forfeited on appeal. The court stated that the defendant's "claims are based on the insufficiency of the evidence to support the order or judgment. We have already held that such claims do not require assertion in the court below to be preserved on appeal. [Citations.] Respondent offers nothing to convince us otherwise. We accordingly conclude that Pacheco's claims are not forfeited or waived on appeal and we will proceed to the merits." (*People v. Pacheco*, *supra*, 187 Cal.App.4th 1392, 1397.)

7

Since *Pacheco* was decided, however, it has been overruled in part in both *People v. McCullough* (2013) 56 Cal.4th 589 and *People v. Trujillo* (2015) 60 Cal.4th 850, precisely on the question of the forfeiture of the right to ability-to-pay hearings, if no objection or request was made in the lower court. In *McCullough*, the California Supreme Court considered an order that the defendant pay a booking fee under Government Code section 29550.2, subdivision (a). Government Code section 29550.2, subdivision (a), provides in relevant part: "If the person has the ability to pay, a judgment of conviction shall contain an order for payment of the amount of the criminal justice administration [booking] fee by the convicted person . . . ." The court held that, based on the statutory language, the defendant had a right to a determination of his ability to pay before the court ordered him to pay the booking fee. However, a right—even a constitutional right—may be forfeited in criminal as well as civil cases by the failure to assert the right in a timely fashion. " 'Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal.' [Citation.] ' "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]" ' [Citation.] Additionally, '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' [Citation.]" (*People v. McCullough*, *supra*, 56 Cal.4th 589, 593.)

8

Application of the forfeiture rule is not automatic; there are exceptions when competing concerns may persuade the appellate court to conclude that the failure to object does not forfeit review. For example, a forfeiture rule for failure to plead the statute of limitations does not apply because it would run counter to the Legislature's intent in providing the statute of limitations. (*People v. Williams* (1999) 21 Cal.4th 335, 344.) "Parties may generally challenge the sufficiency of the evidence to support a judgment for the first time on appeal because they 'necessarily objected' to the sufficiency of the evidence by 'contesting [it] at trial.' [Citations.]" (*People v. McCullough*, *supra*, 56 Cal.4th 589, 596.) Defendant has cast his claim as one for insufficiency of the evidence, attempting to bring his challenge within the "sufficiency of the evidence" exception to the forfeiture rule. However, in contrast to sufficiency-of-the-evidence challenges to questions placed at issue in a trial—as to which an objection is "necessarily" implied, there was no contested hearing below, and no factual record developed, on the matter of defendant's ability to pay. The *McCullough* court opined that a reviewing court is more willing to review an issue in the first instance on appeal if it is one of law, but that forfeiture applies to alleged factual errors. (*Id*. at p. 594.) "Ability to pay" is dependent on the resolution of many factual considerations, and is not easily reviewable on appeal in the first instance, particularly if no record has been developed. (*Id.* at p. 592.)

The court held that, "because a court's imposition of a booking fee is confined to factual determinations [i.e., ability to pay], a defendant who fails to challenge the sufficiency of the evidence at the proceeding when the fee is imposed may not raise the challenge on appeal." (*People v. McCullough*, *supra*, 56 Cal.4th 589, 597.)  Notably, the court also stated:  "Given that imposition of a fee is of much less moment than imposition of sentence, and that the goals advanced by judicial forfeiture apply equally here, we see no reason to conclude that the rule permitting challenges made to the sufficiency of the evidence to support a judgment for the first time on appeal 'should apply to a finding of' ability to pay a booking fee under Government Code section 29550.2.  [Citation.]  We disapprove *People v. Pacheco*, *supra*, 187 Cal.App.4th 1392, to the extent it holds the contrary." (*People v. McCullough*, *supra*, at p. 597.)

In *People v. Trujillo*, *supra*, 60 Cal.4th 850, the defendant had been ordered to pay both a booking fee (Gov. Code, § 29550.1) and the cost of a probation investigation report (Pen. Code, § 1203.1b).  Defendant did not object below to either order.  The Court of Appeal, following *McCullough*, found that the defendant had forfeited the right to challenge the booking fee, but reversed and remanded with directions to follow the procedures outlined in Penal Code section 1203.1b for determining the defendant's ability to pay the probation cost of the presentence report.  The Court of Appeal expressly relied on its decision in *People v. Pacheco*, *supra*, 187 Cal.App.4th 1392; it found that the failure to follow the procedures provided in the statute (determination by the probation officer of the costs and the defendant's ability to pay, duty to inform the

10

defendant of the right to a hearing on ability to pay, waiver by the defendant, and, if the defendant does not waive the hearing, referral to the trial court for a determination of ability to pay) was a deficiency compelling reversal. The California Supreme Court, on review, disagreed and found that the failure to object below to the imposition of the probation costs under Penal Code section 1203.1b resulted in a forfeiture of the ability-to-pay issue on appeal. The court expressly "further disapproved" *People v. Pacheco*, "to the extent it is inconsistent with this opinion." (*People v. Trujillo*, *supra*, 60 Cal.4th 850, 858, fn. 5.)

Given the binding precedents (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455) concerning forfeiture (by failure to object) with respect to similar ability-to-pay sentencing issues, we conclude that orders to pay incarceration costs under Penal Code section 1203.1c are also subject to forfeiture by failure to object.

Defendant is not, however, wholly without remedy. Penal Code section 1203.1c, subdivision (a), provides the trial court with discretion to conduct a hearing to modify the order while defendant remains on probation: That is, "[t]he court may, in its discretion, hold additional hearings during the probationary period." Defendant may petition the court to hold such a hearing.

11

<div align="center">DISPOSITION</div>

We conclude that defendant forfeited the issue raised on appeal (sentencing order to pay presentence incarceration costs under Pen. Code, § 1203.1c) by failing to raise any objection or to request a hearing below.  The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<div align="right">McKINSTER _____<br/>Acting P. J.</div>

We concur:

KING _____
<div style="margin-left:2em">J.</div>

CODRINGTON _____
<div style="margin-left:2em">J.</div>